SOUTHERN PAC. R. CO. v. SMITH et al.

(Circuit Court, S. D. California. May 18, 1896.)

No. 426.

RAILROAD LAND GRANTS—INDEMNITY—LIMITS OF SELECTION.

A railroad company, to which a grant has been made by congress of alternate sections of public land, on each side of its road, with the right to select other lands, within a limited distance beyond such alternate sections, in lieu of lands sold or otherwise disposed of by the government, cannot select indemnity lands on one side of its road, to make good losses sustained on the other side. U. S. v. Burlington & M. R. R. Co., 98 U. S. 334, followed.

Wm. Singer, Jr., and W. F. Herrin, for complainant.
N. Blackstock, Geo. J. Dennis, and Joseph H. Call, for defendants.

ROSS, Circuit Judge. The tracts of land in controversy in this suit having been patented to the defendant Smith under the pre-emption laws of the United States, and by him afterwards conveyed to the defendant Wolff, the complainant, claiming to be entitled to them by virtue of a congressional grant, brought this suit to obtain a decree that the title conveyed by the patent is held in trust for it, to compel the conveyance thereof to the complainant, and to enjoin the defendants from asserting any title to the lands. The grant under which the complainant claims is that of March 3, 1871, entitled "An act to incorporate the Texas Pacific Railroad Company, and to aid in the construction of its road, and for other purposes" (16 Stat. p. 573), by which the complainant was authorized to construct a line of railroad from a point at or near Tehachipi Pass, by way of Los Angeles, to the Texas Pacific Railroad at or near the Colorado river, with the same rights, grants, and privileges, and subject to the same limitations, restrictions, and conditions, as were granted to the complainant by the preceding act of July 27, 1866, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from the states of Missouri and Arkansas to the Pacific coast" (14 Stat. p. 292). The terms of the grant under which the complainant claims are, therefore, to be found in the act of July 27, 1866. So far as applicable to the present case, it was a grant of every alternate section of public land, not mineral, designated by odd numbers, to the amount of 10 alternate sections per mile on each side of the road the complainant was authorized to build, to which the

United States should have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time such route should be designated by a plat thereof filed in the office of the commissioner of the general land office; and where, prior to that time, any of the sections or parts of sections should be granted, sold, reserved, occupied by homestead settlers, or pre-empted or otherwise disposed of, the act provided that other lands should "be selected by said company in lieu thereof, under the direction of the secretary of the interior, in alternate sections, designated by odd numbers, not more than ten miles beyond the limits of said alternate sections, and not including reserved numbers."

The bill as amended, to which the defendants interposed a plea, which plea the complainant caused to be set down for argument, and which has been argued and submitted to the court for decision, alleges, among other things, that, on or before April 3, 1871, complainant fixed the general route of the entire line of railroad which it was authorized by the act of March 3, 1871, to construct, and that, on April 3, 1871, the line of the road was designated on a plat thereof, filed on that day in the office of the commissioner of the general land office; that the said general route, plat, and designation of the line were duly approved and accepted by the commissioner of the general land office and by the secretary of the interior, and, on April 21, 1871, the commissioner of the general land office, by direction of the secretary of the interior, dated April 19, 1871, withdrew the odd-numbered sections of land, within 30 miles of the railroad line shown upon the said plat, from sale or location, pre-emption, or homestead entry, which order of withdrawal has ever since continued in force and effect, except in so far as, if at all, the same may have been affected by an order of the secretary of the interior, dated August 15, 1887, directing the restoration of all land withdrawn and held for indemnity purposes under the grant to the complainant. The bill, as amended, further alleges that, on May 16, 1871, complainant accepted the terms, conditions, and impositions of the act of March 3, 1871, and thereafter constructed and fully equipped the entire railroad provided for in the act in five several sections, along the route designated upon the plat filed April 3, 1871, and that, after the completion of the construction and equipment of the said sections, respectively, commissioners were duly appointed by the president to examine the same, who did so, and reported to the president the completion and equipment of the road in accordance with the requirements of the act, which report was accepted and approved by the secretary of the interior and by the president; that the section of the road opposite which the land in controversy is situated extends from San Fernando to Mojave, in respect to which section the report of the commissioners was made February 17, 1877, and was approved by the president March 2, 1877. The bill, as amended, further alleges that, on February 17, 1877, the complainant filed with the secretary of the interior a map of that portion of its road showing the definite location and construction thereof, which map was approved by the secretary of the interior March 6, 1877. The bill, as amended, also describes the

tracts of land lost to it, in lieu of which it claims the lands in controversy, and alleges that the lands so lost are situated on the north side of its road as definitely located and constructed, and within 20 miles of that portion of the road, as constructed, extending from Spadra to San Gorgonio, and that the lands so lost to complainant were granted, as part of the Rancho Muscupiabe, prior to the time when the line of the complainant's railroad was designated by a plat thereof filed in the office of the commissioner of the general land office; that the tracts of land in controversy, which are specifically described in the bill as amended, are parts of an odd-numbered section situated on the south side of the complainant's road as definitely located and constructed, and distant more than 20 miles from, but lying within 30 miles of, that section of the road which extends from San Fernando to Mojave, which tracts were, at the time of the passage of the act of March 3, 1871, vacant and unappropriated public lands of the United States, not mineral, to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, and have ever since so remained, excepting, only, as they have been affected by the laws of congress and the acts of the parties in the amended bill mentioned. The bill, as amended, further alleges that, on October 3, 1887, complainant filed its indemnity list No. 25 in the land office of the United States at Los Angeles, within which district the lands in controversy are situated, describing the tracts in controversy as selected by the complainant in lieu of the aforesaid lands lost to complainant; that the indemnity list of the complainant was in the form, and accompanied by the certificates, affidavits, and fees, required by law and the rules and regulations prescribed by the secretary of the interior and the commissioner of the general land office; that, by the filing of the list, with the accompanying papers, complainant did, on October 3, 1887, duly select, under the direction of the secretary of the interior, the tracts in controversy, by virtue of the grant contained in the act of March 3, 1871; and that, at the time of such selection, the complainant had not, nor has it yet, selected or received lands to the extent or amount earned and acquired by it by virtue of the granting act.

The plea denies that the map filed by the complainant in the department of the interior in the year 1871 was anything more than a map of the general route of the road it proposed to build under the authority of the act of March 3, 1871. It denies that the lands described in the bill as amended are situated within 30 miles of the line of the general route designated upon the map filed by the complainant in the department of the interior, and alleges that the said lands are situated more than 30 miles from that line. It alleges that on or about the ———— day of August, 1887, the secretary of the interior made and entered in his records an order revoking and annulling all orders previously made reserving lands within the indemnity limits of every grant made to the complainant railroad company, and restoring them to the public domain, except so far as they had theretofore been lawfully selected by complain-

ant. The plea further alleges that, from March 3, 1871, to October 3, 1887, the complainant did not select, or apply to select, the lands involved in this suit as indemnity lands, under the direction of the secretary of the interior or otherwise; and the defendants deny that the secretary of the interior approved the complainant's application to select the lands in controversy, and allege that he rejected the same. The plea further alleges that, on the 7th day of December, 1887, the defendant Smith settled upon the lands in controversy, and, on the same day, filed his declaratory statement in the United States land office therefor, and that, on May 2, 1890, he applied to the register and receiver of the local land office of the district where the lands are situated to make final proof under the pre-emption laws and the regulations of the interior department, and that, in pursuance thereof, on June 2, 1890, he made final proof showing that he had complied with all the requirements of the pre-emption laws, and thereupon he paid to the United States the purchase price for the lands in controversy and received from the register and receiver of the local land office a final certificate for those lands in due form of law, and on November 3, 1891, a patent was issued by the United States to Smith therefor.

From the facts alleged, it appears that the lands in controversy are not within 30 miles of the general route of the road as located by the complainant, and as indicated on the map filed by it in the office of the commissioner of the general land office. They were not, therefore, withdrawn from pre-emption or sale, for the benefit of the complainant, either by the order of the secretary of the interior or by operation of the granting act itself. Nevertheless, the lands in controversy are within 30 miles of, but more than 20 miles from, the road as definitely located and constructed, and, if vacant and unappropriated, were subject to be taken as authorized by the law, to make good losses sustained by the complainant within the primary limits of its grant. Complainant attempted to select these lands, which are situated on the south side of its road, on October 3, 1887, in lieu of lands situated on the north side thereof within the primary limits of the grant, and which were lost to complainant, by including them in a list filed on that day in the proper local land office, in the form and accompanied by the certificates, affidavits, and fees required by law. This was prior to any attempt at settlement on, or entry of, the lands by the defendant Smith; his settlement, which was the basis of the patent subsequently issued to him, having been made December 7, 1887. Complainant commenced the present suit March 10, 1892, but little more than four years after the inauguration of the adverse claim of the defendants.

The lands in controversy being within the indemnity limits of the complainant's grant, and being, at the time of the complainant's attempted selection of them, vacant and unappropriated, to which the United States had full title, and not falling within any of the exceptions to the grant, and the complainant having done all in its power to select them by filing in the proper office its claim to them in due form, accompanied by the affidavits and certificates re-

quired by law, and paying the proper fees, I think it clear that it is entitled to maintain the present bill, unless it be, as contended on the part of the defendants, that indemnity lands on one side of the road cannot be selected to make good losses sustained by the complainant on the other side. That they cannot is, I think, in effect, held by the supreme court in the case of U. S. v. Burlington & M. R. R. Co., 98 U. S. 334–342. On the authority of that case, a decree will be entered sustaining the plea, and dismissing the bill, as amended, at complainant's cost.